McKiNNBY, J.,
delivered the opinion of the Court.
This was a bill to assert a vendor’s lien on a lot of ground situate in the town of Memphis.
On the 1st of September, 1853, the complainant, by bond for title, in the usual form, covenanted to convey said lot to the defendant, when the consideration (being $4250) should be paid. Four notes under seal, each for the sum of $1062 50, bearing even date with the title-bond, due and payable respectively on the 1st of September, 1854, 1855, 1856, and 1857, with interest from date, *349 ■were executed and delivered by Taylor, the defendant, to the complainant.
The present hill was filed on the 28th of November, 1855. Only two of the four notes had then fallen due, the third note having over ten months and the fourth note nearly two years to run before maturity. The bill, it is true, shows that only two of the notes were due, yet it seeks to enforce the lien as to the whole of the purchase-money of the lot. The prayer is specific, that the defendant be decreed to pay said purchase - money, or, in default of his so doing, that the said land be sold for the purpose of paying the same, etc.
The cause was brought to final hearing on the 3d day of February, 1857. At this date, it will be observed, three of the notes were overdue, the third having matured pending the suit; but the last note had still about seven months to run before falling due.
It should have been previously stated that, by the terms of the agreement, as evidenced by the title-bond, the purchase-money due upon said notes was to be paid in New York or Philadelphia.
On this state of facts, the decree — without specifying any amount as due, for which the lien should be enforced, and without any notice of the fact that part of the purchase-money was not then due or payable — in general terms declares the right of the complainant to relief; and directs that the master, after giving twenty days’ notice of the time and place of sale, shall expose the lot of ground to public sale, on a credit of seven months, requiring bond and security from the purchaser, unless the defendant should, within thirty days from that date, “ pay into the *350 bands of tbe clerk and master tbe full amount of tbe purchase-money due and unpaid, including interest and exchange on New York or Philadelphia,” and referring it to tbe master to take proof, state an account between tbe parties, and make bis report to tbe following term of tbe Court. From this decree tbe defendant appealed.
According to tbe well-established practice of our Courts, this decree is erroneous in more respects than one. First: tbe decree, in pursuance of tbe prayer of tbe bill, declares tbe right of complainant to assert bis lien as to tbe entire purcbase-money; and, to this end, authorizes a sale of tbe lot, after thirty days from tbe date of tbe decree, if tbe money was not paid into the office by defendant. This is tbe obvious construction and intention of tbe decree. So far as regards tbe last instalment, being one-fourth of tbe purcbase-money, tbe complainant bad no right to demand tbe enforcement of bis lien: that note was not due, nor would it fall due, until about six months after tbe time when, by tbe terms of tbe decr.ee, a sale of tbe lot was authorized for tbe satisfaction of this as well as of tbe notes which were due.
This, under tbe course of decision in this State, cannot be maintained. Tbe most that complainant was entitled to, would have been, tbe option to have enforced tbe lien to tbe extent tbe purcbase-money bad fallen due at tbe date of tbe decree, which would have exhausted tbe lien, or, to have bad tbe cause postponed until the entire debt fell due. This course concedes, perhaps, more than tbe complainant in strictness bad a right to claim. Still, upon tbe state of tbe pleadings in this case, we think it allowable; and tbe decree will be modified accordingly.
*351 Secondly: it was an unauthorized practice to decree a sale until the exact amount due to the complainant, and for which a decree was sought, had been ascertained by reference to the master or by the Chancellor himself. A decree in Chancery, like a judgment at law, should on its face ascertain the precise sum recovered. A decree for an indefinite amount, to be in vacation ascertained and fixed by the clerk upon his judgment alone, cannot be allowed. More especially is this practice to be discountenanced where a sale of real estate is decreed, before the amount of the debt is ascertained.
To sanction such a practice would be to admit the delegation of judicial authority by the Court to the clerk, which, in a matter of this nature, is not allowable, except upon an order of reference for the information of the Chancellor; but the action of the master in such case must undergo the supervision of the Chancellor, and receive his sanction, and rest upon his judicial responsibility.
It was, therefore, irregular to order a sale of the lot until after the exact amount to be paid had been ascertained and stated in the decree; and then, according to the established practice, a reasonable time ought to have been given the defendant to have paid the amount into the office of the Court, before proceeding to sell the land.
The decree will be reversed, and the cause be remanded to the Court of Chancery for a rehearing, with liberty to the complainant either to take a decree for the amount due at the date thereof, or to have the cause postponed until the last payment shall fall due. An election to adopt the former course will be the full measure of relief to which, as vendor, he will be entitled, and will exhaust his lien. Rut, by pursuing the latter course, he will have *352 the right to make bis lien available as to the entire amount of the purchase-money.
A decree will be made in conformity with the principles herein declared.